## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **LARRY SHORT** | **CIVIL ACTION** |
| **VERSUS** | **NO:**       **07-02733** |
| **MICHAEL J. ASTRUE[1], Commissioner of the Social Security Administration** | **SECTION: "S" (4)** |

## REPORT AND RECOMMENDATION

### I.       Introduction

This is an action for judicial review of a final decision of the Commissioner of Social Security pursuant to Title 42 of the United States Code § 405(g).  The Commissioner denied Larry Short's claim for Supplemental Social Security Income Benefits under Title XVI of the Social Security Act, Title 42 United States Code § 1382c and under Title II for Disability Insurance Benefits.

The matter was referred to the undersigned United States Magistrate Judge pursuant to Title 28 United States Code § 636(b) for the submission of Proposed Findings and Recommendations.

### II.   Factual and Procedural Background

Larry Short ("Short") is a forty-five-year-old male who has an eighth grade education with past relevant work as an assembly line worker, a long and short haul truck driver, excavator

---

[1] The Court substitutes Michael J. Astrue, the current Commissioner of the Social Security Administration in this case, for his predecessor, Jo Anne B. Barnhart.  Fed. R. Civ. P. 25(d)(1).

operator, and sandblaster.  (Tr. 49, 67-74, 77-87, 222.)  Short first filed for disability benefits with the Social Security Administration ("SSA") on October 27, 2004, alleging disability since October 4, 2002.  (Tr. 198-200.)  He alleges that he is disabled and unable to work because he suffers from strokes, seizures, and hip problems.  (Tr. 41, 42-46, 72-74.)  However, the SSA denied Short's applications initially and upon reconsideration.  Therefore, Short requested a hearing before the Administrative Law Judge ("ALJ").

On September 13, 2006, a hearing took place before ALJ Charles W. Kunderer.  (Tr. 206-226.)  On October 17, 2006, the ALJ issued a written decision denying Short's applications for benefits.  (Tr. 13-18.) The ALJ found that Short met the insured status requirement of the Social Security Act through December 31, 2005.  (Finding 1, Tr. 15.)  He further found that Short has not engaged in substantial gainful activity since October 4, 2002, the alleged onset date.  (Finding  2, Tr. 15.)  The ALJ noted that Short has severe impairments, consisting of transient ischemic attacks, atypical seizure disorder, and hypertension, which minimally affects his ability to perform work related activities.  (Finding 3, Tr. 15.)

The ALJ held that Short does not have an impairment or combination of impairments that medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P.  The ALJ also found that Short had the residual functional capacity to perform all exertional level work activity, but must avoid driving hazardous machinery.  The ALJ noted that the residual functional capacity is consistent with the record evidence.

After the ALJ denied his application for benefits, Short filed a **Motion for Summary Judgment (R. Doc. 18)** seeking a determination as a matter of law that he is disabled pursuant to the Social Security Guidelines.  He further seeks a determination of whether the ALJ properly

considered his testimony regarding his limitations as a result of the physical limitations at issue.[2]

The Commissioner, in compliance with the Court's order, issued a reply brief and contends that the ALJ's decision is based upon substantial evidence on the record as a whole and must be affirmed.  (Δ Brief, R. Doc. 19.)  The Commissioner further contends that the ALJ properly evaluated Short's credibility.  (Δ Brief, R. Doc. 19.)

III.    **Standard of Review**

The role of this Court on judicial review under Title 42 U.S.C. § 405(g) is to determine whether there is substantial evidence in the record to support the determination of the fact finder. The Court may not re-weigh the evidence, try issues *de novo*, or substitute its judgment for that of the Secretary.  *Allen v. Schweitker,* 642 F.2d 799, 800 (5th Cir. 1981).  Review of the Secretary's decision is limited to "whether his findings are supported by substantial evidence in the record and whether he applied the correct legal standards." *Emory v. Sullivan*, 936 F.2d 1092, 1093 (10th Cir. 1991).  An ALJ's failure to apply the correct legal test constitutes a ground for reversal.  *Casias v. Secretary of Health & Human Servs.*, 933 F.2d 799, 801 (10th Cir. 1991).

Substantial evidence is more than a scintilla and less than a preponderance, and is considered relevant such that a reasonable mind might accept it as adequate to support a conclusion.  *See Richardson v Perales*, 402 U.S. 389, 401 (1971).  It must do more than create a suspicion of the existence of the fact to be established, but no "substantial evidence" will be found where there is only a "conspicuous absence of credible choices" or "contrary medical evidence." *See Payne v. Weinberger*, 480 F.2d 1006, 1007 (5th Cir. 1973); *Hemphill v. Weinberger*, 483 F.2d 1137, 1138

----

[2] The Court notes that Short did not comply with the Court's working Scheduling Order in place, as it required the submission of a brief and not a motion.  Compliance will be enforced should the circumstance present itself in the future.

(5th Cir. 1973).

The concept of disability is defined in the Social Security Act, as the "inability to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted . . . for a constructive period of not less than twelve months." *See* 42 U.S.C. §§ 416(i)(1), 423(d)(1)(A). Section 423(d)(3) of the Act further defines "physical or mental impairment" as "an impairment that results from anatomical, physiological or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *See* 42 U.S.C. § 423(d)(3).

In determining whether a claimant is capable of engaging in any substantial gainful activity, the Secretary applies a five-step sequential evaluation process. The Regulations governing the steps of this evaluation process are: (1) a claimant who is working and engaging in a substantial gainful activity will not be found to be disabled no matter what the medical findings are; (2) a claimant will not be found to be disabled unless he has a "severe impairment"; (3) a claimant whose impairment meets or is equivalent to an impairment listed in Appendix 1 of the regulations will be considered disabled without the need to consider vocational factors; (4) a claimant who is capable of performing work that he has done in the past must be found "not disabled"; and (5) if a claimant is unable to perform his previous work as a result of his impairment, then factors such as his age, education, past work experience, and residual functional capacity must be considered to determine whether he can do any work that exists in the national economy. *See Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990).

For mental impairments, an additional regulatory process supplements the five-step process detailed above. *Plummer v. Apfel*, 186 F.3d 422, 428 (3d Cir. 1999). It requires the hearing officer

to record the pertinent signs, symptoms, findings, functional limitations, and effects of treatment contained in the case record to determine if a mental impairment exists. *Id.* If an impairment is found, the examiner must analyze whether certain medical findings relevant to a claimant's ability to work are present or absent. *Id.* The examiner must then rate the degree of functional loss resulting from the impairment in certain areas deemed essential for work.[3] *Id.*

In determining whether a potential claimant is disabled, medical opinions from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of a claimant's impairments will always be considered. 20 C.F.R. § 404.1527. If the record contains a medical opinion from a treating physician on the nature and severity of the claimant's impairments, the Commissioner's Regulations dictate that it must be given controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record." 20 C.F.R. § 1527(d)(2); *see also Frey v. Brown*, 816 F.2d 508, 513 (10th Cir. 1987).

The Regulations provide that the ALJ will make a determination based on the available evidence if all evidence received by the ALJ, including medical opinions, is consistent. 20 C.F.R. § 404.1527(c)(1). The Regulations also contain a general rule that greater weight should be given to the medical opinions of treating sources because they are "more likely to be the medical professionals most able to provide a detailed, longitudinal picture" of a claimant's medical impairments. 20 C.F.R. § 404.1527(d)(2). However, if a medical opinion issued by a treating

---

[3] 20 C.F.R. § 404.1520a(c)-(d) provides for the examination of the degree of functional loss in four areas of function considered essential to work. These areas of activities are: (1) daily living, (2) social functioning concentration, (3) persistence or pace, and (4) episodes of decompensation. The degree of limitation in the first three functional areas are rated on a scale that ranges from no limitation to severe. The degree of limitation in the fourth functional area (episodes of decompensation), is rated on the following four-point scale: none, one or two, three, four or more. This information is detailed in the PRT form.

physician is not given controlling weight because it is not well-supported or inconsistent with evidence in the record, then the Court will determine the appropriate weight to give the opinion based on a list of factors found in 20 C.F.R. § 404.1527(d).

In determining how much weight to give a treating physician's report, an ALJ must consider six enumerated factors: (1) the length of treatment relationship and frequency of examination, (2) the nature and extent of the treatment relationship, (3) the relevant evidence in support of the medical opinion, (4) the consistency of the medical opinions reflected in the record as a whole, (5) whether the medical provider is a specialist in the area in which he renders his opinions, and (6) other factors which tend to support or contradict the opinion. 20 C.F.R. § 404.1527(d).

Based on the examination of the aforementioned factors, the ALJ must decide how much weight to give the treating physician's opinion.  If the results from multiple factors suggest that the treating physician's opinion should be more closely considered despite its inconsistency or lack of support in the record, great weight should be given to it.  *See Mosca v. Massanari*, Civ. A. 01-10481, 2002 WL 511522, at * 1 (D.Mass. Jan. 30, 2002).  In all situations, the Secretary must give specific, legitimate reasons if the ALJ's decision disregards the treating physician's opinion that a claimant is disabled.  *See Williams v. Bowen*, 844 F.2d 748, 758 (10th Cir. 1988).

If the ALJ does not discuss or apply the factors listed in 20 C.F.R. § 404.1527(d), the Court may remand the case for reevaluation if the ALJ assigned more weight to a non-treating source opinion than to the treating physician's medical opinion of the claimant.  *Mosca,* 2002 WL 511522 at *1; *see also Baker v. Brown*, 886 F.2d 289, 291 (10th Cir. 1989).  In situations where the treating physician's opinion is not given controlling weight, the ALJ must also explain the amount of weight he has assigned to the opinions of State agency medical and psychological consultants. 20 C.F.R.

§ 404.1527(d)(2).

## IV.    **Analysis**

### A.    **Failure to Consider Plaintiff's Testimony**

Short contends that the ALJ's opinion is not based upon substantial evidence because he did not consider Short's testimony regarding the impact that the disorder has on his everyday life.  Short asserts that due to the frequency with which he experiences seizures, he must take a significant amount of time off from employment.   Short therefore suggests that it would be highly unlikely for him to work given the frequency of his seizure episodes.

The Commissioner contends that the ALJ's decision is supported by substantial evidence on the record.   The Commissioner maintains that Short failed to comply with the Scheduling Order in the subject matter because he did not provide a specific reference by page number to the portions of the record that supports his contention.

According to the record, the ALJ noted that Short is a forty-five-year-old male with an eighth grade education.  He noted that Short testified at the administrative hearing that he worked as an eighteen wheeler truck driver but no longer has a commercial license due to daily seizures.  (Tr. 16.) He noted that Short visited the emergency room on July 12, 2006, and was thereafter instructed not to drive or use alcohol but he continued to drink two beers per week.  (Tr. 16.) The ALJ noted that Short had a stroke and also had some problems with standing, walking, and sitting.  He noted that Short testified that he could not afford Dilantin, his seizure medications, however, that Dilantin made him "sleepy."  (Tr. 16.)  He also noted that according to Short, the seizures made him sick but that "he knows what is happening" when he is having a seizure.  (Tr. 16.)

After reviewing the ALJ's opinion, the Court concludes that the ALJ did in fact give

7

consideration to Short's account of the frequency of his seizures.  He considered the medical findings of Daniel J. Trahant, M.D. ("Dr. Tarhant") who examined Short on January 13, 2005.  He noted that on October 4, 2002, Short was admitted to Chabert Hospital, he was evaluated for transient ischemic attacks versus simple partial seizures.  Short's electroencephalogram ("EEG") did not reveal any epileptogenic abnormalities and the remainder of the neurodiagnostic work up was normal including the carotid ultrasound, transeoghageal echocardiogram, and computed tomography ("CT") scan of Short's head.  (Tr. 16.)  The ALJ also noted that Short was discharged on Dilantin.  Further, Dr. Trahant, doubted that Short's complaints of seizures were true seizure manifestations because there was nothing in his background that would cause focal seizures.  Rather, Dr. Trahant strongly suspected pseudoseizures or that other psychogenic factors involved.  (Ex B-2F; Ex. B-4F; Tr. 17.)          After considering the above circumstances, the Court finds that the ALJ appropriately considered Short's account of the frequency of the seizures such that his decision is based upon substantial evidence.  The Court further notes that Short admitted that he did not take his Dilantin.  Therefore, this fact alone could be justification for the ALJ to conclude that he was not disabled. *Johnson v. Sullivan,* 894 F.2d 683, 685 (5th Cir. 1990).

### B.      Short's Credibility

Short also contends that the ALJ failed to give any credibility to his testimony.  Short's attorney noted that even though Short was represented through the proceedings, the ALJ wrongly indicates that Short was not represented.  He also complains that he requested (1) a "C.E." that would address Short's deteriorating eye condition and (2) clinical correlation to Short's atypical seizure disorder.

In opposition, the Commissioner contends that the ALJ properly evaluated Short's

8

credibility.  The Commissioner notes that while Short is correct that the ALJ made a misstatement about the presence of counsel, the misstatement does not constitute reversible error.

Upon examining the record, the Court recognizes that the misstatements exist.  However, the statement regarding the presence or absence of counsel is a technical error with no showing of prejudice.  The body of the ALJ's opinion clearly shows that he evaluated the medical evidence of record including prescriptive medications and Short's testimony.  *Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000).  Therefore, the Court finds that the ALJ's opinion is based upon substantial evidence.

## V.     **Recommendation**

**IT IS RECOMMENDED** that the ALJ's decision denying Short's Supplemental Social Security Income Benefits be **AFFIRMED**.

**IT IS FURTHER RECOMMENDED** that Short's **Motion for Summary Judgment (R. Doc. 18)** be **DENIED**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within 10 days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  *See Douglass v. United States Auto Ass`n*, 79 F. 3d 1415, 1430 (5th Cir. 1996).

New Orleans, Louisiana, this 23rd day of July 2008.

**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**

9